UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LORRAINE WELLS, | § § | |
| Plaintiff, | § § | |
| v. | § | Civil Action No. 3:15-CV-3759-BK |
| | § § | |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge, Doc. 18, this case has been transferred to the undersigned for a final ruling. The Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 19, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 21, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**I.     BACKGROUND**[1]

**A.     Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits and supplemental security income under the Social Security Act ("the Act"). In October 2012, Plaintiff filed for benefits, claiming that she became disabled in September 2012. Doc. 14-6 at 2-5. Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 14-3 at 27-37; Doc. 14-5 at 2-8, 14-17.

---

[1] The following background comes from the transcript of the administrative proceedings, which can be found at Doc. 14.

B.     **Factual Background**

Plaintiff was 58 years old when she applied for benefits, and she had a high school education and past relevant work as a security guard. Doc. 14-3 at 45. In September 2012, Plaintiff was admitted to the hospital after having a stroke. Doc. 14-3 at 46. Thereafter, she sought ongoing medical treatment with Dr. Saboohi Zafar, M.D. who noted in October 2012 that Plaintiff had difficulty standing for more than 15 minutes due to her medical condition. Doc. 14-10 at 70.

Plaintiff sought psychological treatment at Dallas Metrocare, starting in October 2012, reporting depression, low energy, anhedonia, hopelessness, difficulty sleeping, poor concentration, and isolating behavior. Doc. 14-9 at 57. Although she was tearful and her affect was restricted, her thought processes were organized, and her insight and judgment were good. Doc. 14-9 at 58. In January 2013, Plaintiff reported that she was depressed, but she did not want to take any medication at that time. Doc. 14-9 at 52. In March 2013, Plaintiff was noted to be excessively worried and to have a "so-so" mood. Doc. 14-9 at 44. She was assessed as being depressed due to being denied unemployment benefits. Doc. 14-9 at 46.

In June 2013, although Plaintiff reported being excessively worried and feeling "very slow," her thought processes were organized, and her insight, thought control, and judgment were good. Doc. 14-9 at 63. Plaintiff began taking an antidepressant at that time because her depression had increased, she did not want to do anything, and she was not sleeping. Doc. 14-9 at 64. Over the course of the next 18 months of treatment at Metrocare, Plaintiff was often noted to have a sad mood and to be worried and anxious, but her thought processes were consistently organized, she was cooperative, adequately groomed, had a normal attention span, and her

insight, thought control, impulse control, and judgment were good, and she was fully oriented. Doc. 14-9 at 3-4, 70; Doc. 14-11 at 6-9; Doc. 14-11 at 46, 49-50.

Plaintiff underwent a consultative psychological examination in January 2013 conducted by Dr. Barbara Susanne Fletcher, Psy.D. Doc. 14-9 at 34-38. Dr. Fletcher reported that Plaintiff used a cane to ambulate and appeared tearful during the examination. Doc. 14-9 at 34. She exhibited no thought disorder, easily established a rapport, and had no delusions or illogical thinking although her mood and affect were anxious and she evidenced mild word-finding problems. Doc. 14-9 at 36. Dr. Fletcher diagnosed Plaintiff with cognitive disorder not otherwise specified and assessed a global assessment of functioning ("GAF") score of 51. Doc. 14-9 at 37. She considered Plaintiff's prognosis to be guarded. Doc. 14-9 at 37.

In April 2013, state consultative physician, Dr. Richard Campa, M.D., determined that Plaintiff was able to understand, remember, and carry out detailed but not complex instructions, make basic decisions, attend and concentrate for extended periods, interact with others, and respond to changes in a routine work setting. Doc. 14-4 at 45. The doctor found that the alleged severity of Plaintiff's limitations were not supported by the evidence of record.

In August 2014, a Metrocare psychiatrist, Dr. Kazia Luszczynska, completed a mental assessment checklist regarding Plaintiff's work-related limitations. Doc. 14-11 at 32-34. Dr. Luszczynska diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and a GAF score of 45. Doc. 14-11 at 33. Additionally, Dr. Luszczynska determined that Plaintiff had an extreme loss of ability (defined as no useful ability) to: (1) maintain attention or concentration for a two-hour period; (2) perform at a consistent pace without an unreasonable number and length of breaks; (3) accept instructions and respond appropriately to criticism from supervisors; (4) respond appropriately to changes in a routine work setting; (5) cope with normal

work stress without exacerbating pathologically based symptoms; and (6) finish a normal work week without interruption from psychologically based symptoms. Doc. 14-11 at 32-33. Dr. Luszczynska also predicted that Plaintiff would, on average, have four or more workplace absences each month due to her impairments, symptoms, or treatment. Doc. 14-11 at 34. However, on the same day she completed the questionnaire, Dr. Luszczynska observed that Plaintiff was adequately groomed, cooperative, her thoughts were organized, she was fully oriented, her attention span was normal, and her insight, judgment, and impulse control were all good. Doc. 14-11 at 46.

**C.**     **The ALJ's Findings**

After holding an administrative hearing, the ALJ denied Plaintiff's applications for benefits. Doc. 14-3 at 30. At step one of the sequential analysis, he found that Plaintiff had not engaged in substantial gainful activity since her onset date. Doc. 14-3 at 32. At step two, the ALJ determined that Plaintiff had the severe impairments of hypertension, history of cerebrovascular accident, major depressive disorder, and generalized anxiety disorder. Doc. 14-3 at 32. The ALJ next found at step three that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments. Doc. 14-3 at 33.

Next, the ALJ determined Plaintiff's residual functional capacity ("RFC"), concluding, *inter alia*, that she could understand, remember and carry out detailed instructions, perform multiple routine tasks, follow instructions involving tasks that require some independent judgment, respond appropriately to fellow employees, typical work situations, and changes thereto. Doc. 14-3 at 34. The ALJ assigned little weight to Dr. Luszczynska's opinion, maintaining that it was inconsistent with the Metrocare medical records, which demonstrated that Plaintiff's symptoms were mild to moderate, and her mental status exams were normal. Doc. 14-

3 at 36-37. At stage four of the sequential analysis, the ALJ found that Plaintiff could perform her past relevant work as a security guard and, thus, was not disabled. Doc. 14-3 at 37.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## III.  ARGUMENT AND ANALYSIS

Plaintiff argues that the ALJ erred in rejecting treating specialist Dr. Luszczynska's opinion without good cause, without contrary first-hand opinion evidence, and without conducting the analysis required by 20 C.F.R. §§ 404.1527, 416.927. Doc. 20 at 14-16.

Defendant responds that the ALJ properly considered the opinion evidence and was not required to discuss in detail the factors set forth in sections 404.1427 and 416.927. Doc. 22 at 3-4. In particular, Defendant argues that the ALJ had good cause for giving Dr. Luszczynska's checklist little weight as it was inconsistent with the treatment records from Metrocare, which showed that Plaintiff, while depressed, repeatedly exhibited intact memory, normal attention, good judgment and insight, and organized thought processes. Doc. 22 at 6-7.

Additionally, Defendant asserts that Dr. Luszczynska's opinion that Plaintiff was suffering from major depressive disorder and a GAF score of 45 was controverted by Dr. Fletcher who only diagnosed a "rule out" cognitive disorder and noted that Plaintiff did not

6

report the presence of symptoms consistent with a depressive disorder. Doc. 22 at 8. Defendant points out that Dr. Fletcher assessed Plaintiff's mental status as essentially normal, although she had mild difficulty finding words and an anxious mood and affect. Doc. 22 at 8. Finally, Defendant notes that because this constitutes competing first-hand medical evidence, the *Newton* holding does not apply and the ALJ was not required to discuss the factors in sections 404.1527 and 416.927. Doc. 22 at 10.

  A treating physician's opinion about the nature and severity of a claimant's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). "The opinion of a specialist generally is accorded greater weight than that of a nonspecialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994). However, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). In particular, the ALJ may give little or no weight to a treating physician's opinion so long as the ALJ provides good cause for doing so. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). Good cause exists when a treating source's opinion is conclusory, unsupported by medically acceptable evidence, or lacks substantial support. *Id.* (internal citations and quotation marks omitted).

  If, however, there is no "reliable medical evidence from a treating or examining physician controverting the plaintiff's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [sections 404.1527 and 416.1927]." *Newton*, 209 F.3d. at 453 (emphasis in original). Under that rubric, before the Commissioner may reject a treating doctor's opinion, he must consider the following six factors: (1) the physician's length of treatment of the

claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support for the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.  *Id.* at 455-56.

Upon consideration of the pleadings, the parties' arguments, and the law, the Court finds that the ALJ did not reversibly err in denying benefits to Plaintiff.  As argued by Defendant, the ALJ sufficiently explained why he had good cause for rejecting Dr. Luszczynska's opinion.  In short, the doctor's opinion on the checklist form was inconsistent with and unsupported by the other substantial evidence of record, including Dr. Luszczynska's own treatment notes.  *Myers,* 238 F.3d at 621; *see* Doc. 14-9 at 3-4; Doc. 14-9 at 36-37; Doc. 14-9 at 44, 46, 52, 57-58, 63-64, 70; Doc. 14-11 at 6-9; Doc. 14-11 at 32-34; Doc. 14-11 at 46, 49-50.

Moreover, Dr. Fletcher's opinion constitutes first-hand medical evidence that conflicts with Dr. Luszczynska's checklist assessment that Plaintiff was suffering from major depression and extremely limited in many ways.  Dr. Fletcher noted that when she conducted her examination, Plaintiff's appearance and behavior were appropriate, there was no evidence of a depressive disorder, illogical thinking or thought disorder, Plaintiff was fully oriented, had unremarkable thought content, good abstraction, good memory, and good concentration and, although Plaintiff had mild difficulty finding words, her speech was clear and easily understood. Doc. 14-9 at 34.  Based on her findings, Dr. Fletcher concluded that it was not possible to diagnose Plaintiff with a cognitive disorder with only the information at hand, so she provided a "rule out" diagnosis of cognitive disorder not otherwise specified.  Doc. 14-9 at 38.  Dr. Fletcher's assessment provides competing first-hand medical evidence that the ALJ properly

relied on in rejecting Dr. Luszczynska's opinion and. Consequently, the ALJ was not required to conduct the analysis set forth in sections 404.1527 and 416.1927. *Newton*, 209 F.3d. at 453.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc.19, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 20, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on September 15, 2016.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE